IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.    No.  CR 02-574 MV

DAVID BONNER,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Appeal from his Misdemeanor Conviction for Driving Under the Influence, filed April 10, 2002 **[Doc. 11]**.  The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the appeal is not well taken and will be **DENIED**.

## BACKGROUND

On August 15, 2001, White Sands Missile Range military police officers cited David Bonner ("Defendant") for aggravated driving while intoxicated.  On November 15, 2001, at a bench trial, Magistrate Judge Leslie C. Smith found Defendant guilty of driving while intoxicated in violation of N.M. STAT. ANN. § 66-8-102(A) (Michie 1978).  Defendant filed a notice of appeal of the Magistrate Judge's decision on April 10, 2002 **[Doc. No. 11]**.  In his appellate brief, Defendant argues there is insufficient evidence in the record to support a finding that he was impaired at the time of driving, as required by § 66-8-102(A).

**DISCUSSION**

I. **Standard on Appeal for Insufficiency of Evidence**

The standard of review that is applied to claims that the evidence was insufficient to sustain a conviction is well-established. Viewing the evidence in the light most favorable to the government, a court must determine whether it establishes that "a rational factfinder could reasonably have found" the appellant guilty of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972) (standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt). In reviewing the sufficiency of the evidence, "the court must consider the direct and circumstantial evidence, as well as the reasonable inferences to be drawn from that evidence." *United States v. Robinson*, 2004 WL 2005795, at *1 (D. Kan. Aug. 17, 2004) (citing *United States v. Davis*, 1 F.3d 1014, 1017 (10th Cir. 1993)). The court's review of the record is *de novo*. *See United States v. Grimes*, 967 F.2d 1468, 1472 (10th Cir. 1992), *cert. denied*, 506 U.S. 927 (1992).

II. **Elements of Driving Under the Influence**

Pursuant to N.M. STAT. ANN. § 66-8-102(A) and New Mexico Uniform Jury Instruction 14-4501, the following elements must be established to find Defendant guilty of driving under the influence:

    1.    The defendant operated a motor vehicle;

    2.    At the time, the defendant was under the influence of intoxicating liquor, that is, as a result of drinking liquor the defendant was less able to the slightest degree, either mentally or physically, or both, to

>> exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public; and
>
> 3. This happened in New Mexico, on or about the 15th day of August, 2001.

NMRA Crim. UJI 14-4501; *see also State v. Montoya Guzman*, 96 P.3d 1173, 1178 (N.M. Ct. App. 2004) (a person is "under the influence" if, by virtue of having consumed intoxicating liquor, his ability to handle his vehicle with safety to himself and the public is lessened to "the slightest degree"). In his brief, Defendant concedes that sufficient evidence exists as to element one. As such, this Court need only address element two.

### III. The Instant Case

#### A. Evidence of Driving Under the Influence

The evidence adduced at Defendant's bench trial is as follows. On the morning of August 15, 2001, Defendant was on the premises of the White Sands Missile Range. At about 8:45 a.m., Sargeant Kevin Tisby ("Tisby"), a military police officer, was in his police car in the base parking lot. His partner, Sargeant Christopher Britt ("Britt"), was with him. Tisby heard laughter coming from a car, looked up, and saw Defendant driving past him. Tisby noticed that his eyes were a bloodshot, "kind of yellowish looking color." Record of Transcript ("R.T.") at 40:21-22. Defendant continued driving through the parking lot.

At some point thereafter, Defendant went into one of the buildings on the base to attempt to obtain a monthly base access pass. While inside, Defendant encountered Mr. Cesar Armendariz, an employee in the security division. Mr. Armendariz testified that when he made contact with Defendant, he "smelled a strong odor of alcohol." R.T. at 45:7-8. Later in his testimony, he characterized the smell as "very evident and very strong." R.T. at 46:5. Mr.

Armendariz asked Defendant if he had driven to the base; Defendant answered "yes." Later, as Mr. Armendariz was escorting him to the law enforcement section of the building, Defendant told him that he had been drinking until 4 a.m. that morning. According to Mr. Armendariz, Defendant resisted going with him to the law enforcement area.

Once inside, Britt saw Defendant standing outside the day shift supervisor's office. Britt smelled alcohol on Defendant's breath. "[H]e completely smelled like he bathed in alcohol that morning." R.T. at 54:20-21. Defendant also "was being very loud and boisterous and just kept screaming and hollering." R.T. at 52:21-22. While he was still in the parking lot, Tisby received a radio call from Britt that "they had a person who was being a little disruptive inside the police station." R.T. at 9:11-13. Britt indicated that the person was being rowdy and had an odor of alcohol on his breath. Tisby went inside the police station and saw Defendant. He also smelled a very strong odor of alcohol coming from Defendant.

Tisby asked Britt if Defendant was the person who had been disruptive. His partner responded in the affirmative. Defendant apparently had told Britt that his mother had been driving the car, not him. Tisby, however, informed Britt that he had seen Defendant driving in the parking lot. After learning that Defendant had been driving, Britt administered several Field Sobriety Tests (FSTs) to Defendant in Tisby's presence. Before each test, Britt provided Defendant with detailed instructions. He also asked Defendant if he had any injuries that would restrict him from performing the tests. Defendant indicated that he did not have any such injuries or limitations.

During the walk and turn test, which requires a person to walk heel to toe for nine steps in one direction and then do a three-point turn and walk heel to toe for nine steps in the other

-4-

direction, Britt observed that Defendant "missed heel to toe about three to four times in both directions." R.T. at 56:25-57:1. Further, he was unsure about his balance, he swayed back and forth, and numerous times he raised his hands above his waist. During the one-legged stand and balance test, which requires a person to keep his arms at his side, stand on one leg, keep balance, and count to thirty slowly, Britt again observed Defendant wobbling. "He was very ... wobbly and unsure about his balance. When he lifted ... his right foot, he looked down at it and he ... counted very rapidly. His hands came above his waist" on both legs. R.T. at 59:14-22. Tisby also observed Defendant bring his hands out "and put them back in. He'd lose his balance and ... come back in and he was wobbling." R.T. at 11:15-19. Finally, on the stand and balance test, which requires a person to stand with his feet right next to each other, look straight up, maintain balance, and count to thirty, Britt testified that Defendant was "very wobbly and very unsure about himself, and again, he raised his hands above his hip line." R.T. 60:19-21. Tisby also observed Defendant wobbling.

      Tisby and Britt both felt that Defendant's performance on the FSTs, coupled with the smell of alcohol coming from Defendant's body and breath, indicated that he was under the influence of alcohol and was too intoxicated to drive. Accordingly, they asked Sergeant Alfred James ("James") to perform a breathalyzer test on the Intoxilyzer 5000. After observing Defendant for the required 20-minute period, James gave him instructions on the proper procedure for the breathalyzer test. Defendant was to blow into the sample tube until he heard a tone or was told to stop. According to James and Tisby, Defendant stated that he understood the instructions.

For reasons disputed at the bench trial, the breathalyzer test did not yield a result. James, who administered the test, testified that Defendant brought the tube to his lips, puffed slightly, and handed it back to him, which was not sufficient to register a reading. James indicated to Defendant that he would have to blow into the machine again. According to James, Defendant blew into the machine the same way the second time. After a third unsuccessful attempt, Defendant refused to blow again. James considered this to be a refusal and informed Defendant as such. Disputing this testimony, Defendant's mother and Defendant both stated that he blew into the machine until it made a tone.

At the conclusion of the bench trial, Judge Smith ruled that:

> [I]t's beyond a reasonable doubt that Mr. Bonner was drinking while he was driving and he was - meets the qualifications of the statute that he was driving a car while he was under the influence of intoxicating liquor. There's no doubt in my mind about that and the evidence is replete in the record.

R.T. at 163:12-17.

### B.   Evidence of Defendant's Impairment

The government's case, as summarized above, would permit a reasonable factfinder to determine that Defendant was impaired. First, several base officials smelled a strong odor of alcohol emanating from Defendant. Tisby noticed that Defendant's eyes were bloodshot when Defendant drove by him in the parking lot. Defendant admitted to Mr. Armendariz that he had been drinking until 4 a.m. that morning. Second, several officers reported that Defendant was behaving in a agitated manner, "hollering" and being "rowdy." Third, when Britt conducted the FSTs, he observed Defendant wobbling and exhibiting several other objective signs of intoxication. During the walk and turn test, Britt observed that Defendant missed walking heel to

toe three or four times in both directions. Defendant was also unsure about his balance and swayed back and forth. During the one-legged stand and balance test, Britt again observed Defendant wobbling and having problems with his balance. Tisby made similar observations. Finally, on the stand and balance test, Britt observed that Defendant was wobbly, unsure of his balance, and lifted his hands above his waist. Again, Tisby made similar observations.

Based on Defendant's poor performance on the FSTs, the officers believed that Defendant was intoxicated and they sent him to undergo a breathalyzer test. The test did not yield a definitive result. This is not fatal to the government's case, however. *See Mace v. State*, 944 S.W.2d 830, 833 (Ark. 1997) (noting that a DWI conviction is not dependent upon evidence of blood-alcohol content as long as there is other sufficient evidence of intoxication); *State v. Gutierrez*, 121 N.M. 191, 193, 909 P.2d 751, 753 (N.M. Ct. App. 1996) (finding that the evidence presented, without consideration of the blood alcohol test results, supported conviction for driving under the influence where an officer observed Defendant weaving into other lanes, he smelled of alcohol, he had bloodshot eyes, he failed three sobriety test, he admitted drinking, and the officers believed he was intoxicated); *State v. Kisse*, 351 N.W.2d 97, 101 (N.D. 1984) (affirming a conviction for driving under the influence without any breathalyzer results where the officer observed other indications of intoxication and impairment).

In his appellate brief, Defendant first argues that the government did not present any evidence of illegal or improper "driving behavior to support an impairment determination." It is not necessary, however, for the government to present evidence that Defendant actually drove or drove impaired to sustain a conviction under § 66-8-102(A). *See State v. Tafoya*, 123 N.M. 665, 666, 944 P.2d 894, 895 (N.M. Ct. App. 1997) (motion of the vehicle is not required to support

conviction for driving while intoxicated (DWI)); *State v. Scussel*, 117 N.M. 241, 243, 871 P.2d 5, 7 (N.M. Ct. App. 1993) (in order for defendant to be convicted of driving vehicle under the influence, it is not necessary that the vehicle be in motion, but only that defendant exercise control over vehicle).

Next, Defendant offers his own explanation for the physical intoxication indicators relied upon by the officers in reaching their determination that Defendant was impaired. He argues that the FSTs were conducted in a very small hallway and that several officers crowded around him in an aggressive and threatening manner, thus causing him to perform poorly. Further, he argues that he suffers from back problems, which made it more difficult for him to successfully complete the tests. Finally, he argues that the officers' testimony regarding his performance on the FSTs is unreliable because their observations were not sufficiently documented and their testimony was inconsistent.

For all these reasons, Defendant argues that "[n]o rational trier of fact could have found beyond a reasonable doubt that [Defendant] was impaired, based on the facts set forth above." Def. Brief at 6. "An odor of alcohol, red eyes, and unreliable results of field sobriety tests given in an unfair and intimidating environment, do not amount to proof impairment (sic) beyond a reasonable doubt." *Id*. at 8. As stated above, however, this Court finds that sufficient evidence existed for Judge Smith to determine that Defendant was impaired. Defendant's poor performance on all of the FSTs, combined with the odor of alcohol on his breath, Tisby's observation that his eyes were bloodshot, his rowdy behavior, and his admission that he had been drinking that morning, are sufficient to create the necessary inferences of intoxication and impairment. *See State v. Brennan*, 126 N.M. 389, 393, 970 P.2d 161, 165 (N.M. Ct. App. 1998)

(evidence sustained conviction for driving while intoxicated where arresting officer observed and detected odor of alcohol, bloodshot and watery eyes, and slurred speech, and motorist failed one-legged stand and walk-and-turn field sobriety tests).

Defendant's arguments about why he did not perform well on the FSTs, the lack of documentation by the officers regarding the FSTs, and the supposed inconsistencies in the officers' testimony all go to the weight of the evidence, not its sufficiency. *See Scussel*, 117 N.M. at 243, 871 P.2d at 7 (finding that defendant's argument that he failed the field sobriety tests due to impairment from back problems goes to the weight and effect placed on that evidence by the district court judge). Judge Smith was not required to find Defendant's alternate explanations and testimony persuasive. Clearly, Judge Smith found the officers' accounts of the event more reliable than Defendant and his mother's accounts. The Court finds this entirely reasonable given the record in the instant case.

## CONCLUSION

The evidence as set forth above and the reasonable inferences to be drawn from this evidence were sufficient to permit Judge Smith to decide that Defendant was impaired and under the influence of alcohol. The Court thus cannot find that the evidence was insufficient to sustain the conviction against Defendant. Accordingly, Defendant's appeal must be denied.

**IT IS SO ORDERED**.

**DATED** this 8th day of June, 2005.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
Richard Williams

Attorney for Defendant:
Jess R. Lilley